**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| DAISHA WALLACE<br>2253 Millvale Drive<br>Cincinnati, Ohio 45225,<br><br>               Plaintiff,<br><br>            v.<br><br>FAMILY DOLLAR STORES OF OHIO, LLC<br>2299 Waycross Road<br>Cincinnati, Ohio 45240,<br><br>    **Serve Also:**<br><br>    FAMILY DOLLAR STORES OF<br>    OHIO, LLC<br>    c/o Corporation Service Company<br>    Registered Agent<br>    3366 Riverside Drive, Suite 103<br>    Upper Arlington, Ohio 43221,<br><br>and,<br><br>MIKE (LAST NAME UNKNOWN)<br>c/o Family Dollar Stores of Ohio, LLC<br>2299 Waycross Road<br>Cincinnati, Ohio 45240,<br><br>and,<br><br>CARY (LAST NAME UNKNOWN)<br>c/o Family Dollar Stores of Ohio, LLC<br>2299 Waycross Road<br>Cincinnati, Ohio 45240,<br><br>and,<br><br>RACHEL (LAST NAME UNKNOWN)<br>c/o Family Dollar Stores of Ohio, LLC<br>2299 Waycross Road<br>Cincinnati, Ohio 45240, | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

and,                                                    )
                                                        )
RICHARD ALLEY                                           )
c/o Family Dollar Stores of Ohio, LLC                   )
2299 Waycross Road                                      )
Cincinnati, Ohio 45240,                                 )
                                                        )
and,                                                    )
                                                        )
CAMILA AKEMON                                           )
c/o Family Dollar Stores of Ohio, LLC                   )
2299 Waycross Road                                      )
Cincinnati, Ohio 45240,                                 )
                                                        )
                            Defendants.                 )

Plaintiff, Daisha Wallace, by and through undersigned counsel, as her Complaint against

Defendants Family Dollar Stores of Ohio, LLC ("Family Dollar"), Mike (Last Name Unknown),

Cary (Last Name Unknown), Rachel (Last Name Unknown), Richard Alley, and Camila Akemon,

states and avers the following:

## PARTIES, JURISDICTION, AND VENUE

1. Wallace is a resident of the City of Cincinnati, Hamilton County, Ohio.

2. At all times herein, Wallace was acting in the course and scope of her employment.

3. Family Dollar is a foreign limited liability company that does business at 2299 Waycross Road,

   Cincinnati, Ohio 45240.

4. Family Dollar is and, at all times herein, was an employer within the meaning of R.C. § 4112.01

   *et seq.*

5. Mike (Last Name Unknown) is a resident of the State of Ohio.

6. At all times herein, Mike was acting in the course and scope of their employment.

7. Mike, is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Defendants and who aided, abetted, and incited the discriminatory and/or retaliatory acts described hereafter in violation of R.C. § 4112.01 *et seq.*

8. Cary (Last Name Unknown) is a resident of the State of Ohio.

9. At all times herein, Cary was acting in the course and scope of their employment.

10. Cary, is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Defendants and who aided, abetted, and incited the discriminatory and/or retaliatory acts described hereafter in violation of R.C. § 4112.01 *et seq.*

11. Rachel (Last Name Unknown) is a resident of the State of Ohio.

12. At all times herein, Rachel was acting in the course and scope of their employment.

13. Rachel, is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Defendants and who aided, abetted, and incited the discriminatory and/or retaliatory acts described hereafter in violation of R.C. § 4112.01 *et seq.*

14. Richard Alley is a resident of the State of Ohio.

15. At all times herein, Alley was acting in the course and scope of their employment.

16. Alley, is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Defendants and who aided, abetted, and incited the discriminatory and/or retaliatory acts described hereafter in violation of R.C. § 4112.01 *et seq.*

17. Camila Akemon is a resident of the State of Ohio.

18. At all times herein, Akemon was acting in the course and scope of their employment.

19. Akemon, is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Defendants and who aided, abetted, and incited the discriminatory and/or retaliatory acts described hereafter in violation of R.C. § 4112.01 *et seq.*

20. All of the material events alleged in this Complaint occurred in Hamilton County.

21. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Wallace is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e. and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.*

22. This Court has supplemental jurisdiction over Wallace's state law claims pursuant to 28 U.S.C. § 1367 as Wallace's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

24. Personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1), (3), and (4).

25. Within 300 days of the conduct alleged below, Wallace filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2023-00341 against Defendants ("Wallace EEOC Charge").

26. Wallace dually filed the Wallace EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

27. On or about September 28, 2023, the EEOC issued a Notice of Right to Sue letter to Wallace regarding the Charges of Discrimination brought by Wallace against Defendants in the Wallace EEOC Charge.

28. Wallace received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

29. Wallace has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

4

30. Wallace has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

31. Wallace has properly exhausted her administrative remedies pursuant to R.C. § 4112.052.

## FACTS

32. Wallace is a former employee of Family Dollar.

33. Wallace began working for Family Dollar on or about December 1, 2021.

34. Wallace worked for Family Dollar in the positions of Assistant Manager and Cover Store Manager.

35. Wallace is female.

36. Wallace is African American.

37. Wallace was pregnant while she was working for Family Dollar.

38. In or around March 2022, Wallace became aware that Melissa (Last Name Unknown) was making $1.50 more per hour than Wallace was ("Discriminatory Pay").

39. Melissa is Caucasian.

40. Melissa was hired after Wallace.

41. Melissa was hired as an Assistant Manager, which was the same position Wallace held at the time.

42. The Discriminatory Pay was based on race discrimination.

43. In or around March 2022, Wallace reported the Discriminatory Pay to Human Resources ("HR") ("Report of Race Discrimination").

44. In response to the Report of Race Discrimination, Defendants failed to take prompt remedial action.

45. In or around March 2022, Wallace was pregnant while working for Family Dollar.

46. In or around March 2022, Wallace submitted work restrictions from her doctor limiting her to working only four to five hours per day ("Work Restrictions").

47. The Work Restrictions matched the hours that Wallace was already working in March 2022.

48. In or around March 2022, Wallace submitted the Work Restrictions to Family Dollar and requested to be allowed to continue working only four to five hours per day due to her pregnancy ("Accommodation Request").

49. In response to the Accommodation Request, Defendants failed to take prompt remedial action.

50. In response to the Accommodation Request, Defendants failed to take any action to support Wallace.

51. Wallace's Accommodation Request would not cause Defendants an undue hardship.

52. Before denying Wallace's Accommodation Request, Defendants did not determine whether Wallace's Accommodation Request would cause Defendants an undue hardship.

53. Wallace's Accommodation Request was reasonable.

54. Defendants did not engage in any conversation with Wallace for any alternative options for Wallace's Accommodation Request.

55. In response to Wallace's Accommodation Request, Defendants failed to participate in any interactive process.

56. Defendants denied Wallace's Accommodation Request.

57. Defendants did not provide Wallace's Accommodation Request.

58. Defendants did not provide Wallace with an alternative accommodation in response to Wallace's Accommodation Request.

59. On or about April 29, 2022, Defendants forced to work more than four to five hours per week by making her a Cover Store Manager ("First Retaliation").

60. Defendant's told Wallace that if she did not accept the First Retaliation, then her employment would be terminated.

61. The First Retaliation included new job duties.

62. Wallace's new job duties after the First Retaliation included unloading trucks containing thousands of inventory items for hours at a time without any help, moving the heavy boxes to restock store inventory, and cleaning the store.

63. Similarly situated non-African American employees were not subject to the new job duties included in the First Retaliation.

64. Similarly situated non-pregnant employees were not subject to the new job duties included in the First Retaliation.

65. These new job duties put undue physical strain on Wallace.

66. These new job duties were in contravention of Wallace's Work Restrictions.

67. Following the First Retaliation, Wallace reported the First Retaliation and the pregnancy and gender discrimination she was facing to Cary on multiple occasions ("Reports of Pregnancy Discrimination").

68. Cary did not participate in the decision to hire Wallace.

69. Cary was a District Manager at Family Dollar.

70. Cary is Caucasian.

71. Following the Reports of Pregnancy Discrimination, Cary failed to take prompt remedial action.

72. Following the Reports of Pregnancy Discrimination, Family Dollar failed to take prompt remedial action.

73. In or around May 2022, Wallace requested to schedule her maternity leave for her pregnancy multiple times with Cary, Mike, and to Human Resources ("Maternity Leave Requests").

74. Mike did not participate in the decision to hire Wallace.

75. Mike is Caucasian.

76. Cary did not grant Wallace's Maternity Leave Requests.

77. Mike did not grant Wallace's Maternity Leave Requests.

78. HR did not grant Wallace's Maternity Leave Requests.

79. Following her Maternity Leave Requests, Wallace continued to complaint about the pregnancy and gender discrimination she was facing. Daisha continued to work despite her frequent complaints about the unreasonable workload and the fact that her accommodation requests were not being addressed.

80. In or around June 2022, Camila Akemon was hired as the Store Manager.

81. Akemon did not participate in the decision to hire Wallace.

82. In or around June 2022, Wallace reiterated her pregnancy and gender discrimination complaints and her Maternity Leave Requests to Akemon ("Continued Discrimination Reports").

83. In response to the Continued Discrimination Reports, Akemon failed to take prompt remedial action.

84. In response to the Continued Discrimination Reports, Family Dollar failed to take prompt remedial action.

85. Throughout her employment Wallace noticed dangerous store conditions that threatened the health and safety of Family Dollar's customers and employees ("Unsafe Conditions").

86. The Unsafe Conditions included drink coolers that were leaking unknown liquid on the floor and into the aisles of the store.

87. The Unsafe Conditions included a significant rat infestation in the store.

88. The Unsafe Conditions included rats that were visible and active in the store while customers and employees were in the store.

89. The Unsafe Conditions included rats that were visible and active in and around food and beverage displays and products.

90. The Unsafe Conditions included excess inventory that was stacked from the floor to the ceiling in precarious and unsupported piles that posed significant danger to customers and employees working and shopping in the store.

91. The Unsafe Conditions included excess inventory stacked up in the aisles that posed fall and tripping hazards to employees and customers.

92. The Unsafe Conditions included spoiled milk containers left in the store that customers might have accidentally purchased and gotten sick from drinking.

93. The Unsafe Conditions constituted a threat to the health and safety of Wallace.

94. The Unsafe Conditions constituted a threat to the health and safety of Family Dollar employees.

95. The Unsafe Conditions constituted a threat to the health and safety of customers of Family Dollar.

96. The Unsafe Conditions constituted a threat to the health and safety of the public at large.

97. Wallace reported the Unsafe Conditions to Defendants on multiple occasions during her employment ("Reports of Unsafe Conditions").

98. In response to the Reports of Unsafe Conditions, Defendants failed to take prompt remedial action.

99. On or about June 30, 2022, Wallace was injured at work when she fell over boxes and spilled liquid in the store ("Workplace Injury").

100. Wallace was still pregnant at the time of her Workplace Injury.

101. Due to her Workplace Injury, Wallace injured her back and pelvis and she was leaking bodily fluid (Wallace's "Disabilities").

102. Due to her Disabilities, Wallace had trouble walking, standing, running, sitting, sleeping, lifting, pushing, pulling, and working.

103. As a result of her Disabilities, Wallace is and was considered disabled within the meaning of the ADA, 42 U.S.C. 126 § 12101 et seq.

104. As a result of her Disabilities, Wallace is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

105. In the alternative, Defendants perceived Wallace as being disabled.

106. In the alternative, Defendants perceived that Wallace's Disabilities constituted physical impairments.

107. In the alternative, Defendants perceived Wallace's Disabilities to substantially impair one or more of her major life activities, including walking, standing, running, sitting, sleeping, lifting, pushing, pulling, and working.

108. Despite these actual or perceived disabling conditions, Wallace was still able to perform the essential functions of her job.

109. Akemon witnessed the Workplace Injury.

110. Wallace went to the hospital immediately following the Workplace Injury.

111. The Workplace Injury caused complications with Wallace's pregnancy.

112. The Workplace Injury forced Wallace to deliver her child prematurely.

113. On or about July 12, 2022, Akemon promised Wallace that Wallace would get workers' compensation benefits for her injuries.

114. After Wallace's Workplace Injury, Akemon told Wallace that she would "be taken care of."

115. After Wallace's Workplace Injury, Akemon told Wallace that Family Dollar would file her workers' compensation claim.

116. Family Dollar did not file Wallace's workers' compensation claim.

117. Akemon, Cary, and Rachel blocked Wallace's efforts to secure workers' compensation benefits.

118. Akemon, Cary, and Rachel did not respond to Wallace's attempts to inquire about the status of her workers' compensation claim.

119. Rachel did not participate in the decision to hire Wallace.

120. Rachel is Caucasian.

121. Rachel was an Executive at Family Dollar.

122. After Wallace gave birth, Wallace made numerous efforts to return to work.

123. After Wallace gave birth prematurely, she contacted District Manager, Richard Alley, on or about August 12, 2022.

124. Alley did not participate in the decision to hire Wallace.

125. Alley is Caucasian.

126. Alley is male.

127. Alley failed to respond to Wallace's requests to return to work.

128. In or around November of 2022, Wallace filed charges of discrimination and retaliation against Defendants with the EEOC.

129. On or about December 24, 2022, Wallace was made aware that her employment was terminated ("Termination").

130. The Termination was pregnancy discrimination.

131. The Termination was gender discrimination.

132. The Termination was race discrimination.

133. The Termination was pretext for pregnancy discrimination.

134. The Termination was pretext for gender discrimination.

135. The Termination was pretext for race discrimination.

136. The Termination was retaliation for reporting pregnancy discrimination.

137. The Termination was retaliation for reporting gender discrimination.

138. The Termination was retaliation for reporting race discrimination.

139. The Termination was retaliation for the Reports of Unsafe Conditions.

140. The Termination was retaliation for the Report of Race Discrimination.

141. The Termination was in retaliation for the Reports of Pregnancy Discrimination.

142. The Termination was in retaliation for the Continued Reports of Discrimination.

143. The Termination was in retaliation for filing an EEOC charge against Defendants.

144. The Termination was in retaliation for requesting workers' compensation benefits.

145. The Termination was in retaliation for making workplace health and safety complaints.

146. Defendants has a progressive disciplinary policy ("Discipline Policy").

147. A verbal warning is the lowest level of discipline in the Discipline Policy.

148. Wallace did not receive a verbal warning before the Termination.

149. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

150. Wallace did not receive a written warning before the Termination.

151. A termination is the highest level of discipline in the Discipline Policy.

152. Defendants knowingly skipped progressive disciplinary steps in terminating Wallace.

153. Defendants knowingly terminated Wallace's employment.

154. Defendants knowingly took an adverse employment action against Wallace.

155. Defendants knowingly took an adverse action against Wallace.

156. Defendants intentionally skipped progressive disciplinary steps in terminating Wallace.

157. Defendants intentionally terminated Wallace's employment.

158. Defendants intentionally took an adverse employment action against Wallace.

159. Defendants intentionally took an adverse action against Wallace.

160. Defendants knew that skipping progressive disciplinary steps in terminating Wallace would cause Wallace harm, including economic harm.

161. Defendants knew that terminating Wallace would cause Wallace harm, including economic harm.

162. Defendants willfully skipped progressive disciplinary steps in terminating Wallace.

163. Defendants willfully terminated Wallace's employment.

164. Defendants willfully took an adverse employment action against Wallace.

165. Defendants willfully took an adverse action against Wallace.

166. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

**COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

167. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

168. Wallace is a member of a statutorily protected class based on her gender under Title VII.

169. Defendants treated Wallace differently than other similarly-situated employees based on her gender.

170. Defendants discriminated against Wallace on the basis of her gender throughout her employment with the company.

171. Defendants terminated Wallace's employment without just cause.

172. Defendants terminated Wallace's employment based on her gender.

173. Defendants' discrimination against Wallace based on her gender violates Title VII.

174. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

**COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq*.**

175. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

176. Wallace is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

177. Defendants treated Wallace differently than other similarly-situated employees based on her gender.

178. Defendants discriminated against Wallace on the basis of her gender throughout her employment with the company.

179. Defendants terminated Wallace's employment without just cause.

180. Defendants terminated Wallace's employment based on her gender.

181. Defendants' discrimination against Wallace based on her gender violates R.C. § 4112.01 et seq.

182. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

### COUNT III: UNLAWFUL PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

183. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

184. Under Title VII it is unlawful for an employer to discriminate against an employee on the basis of sex.

185. Title VII provides that the term "on the basis of sex" includes, but is not limited to, "on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions."

186. Title VII further mandates that pregnant women shall be treated the same for all employment-related purposes as other persons not so affected but similar in their ability or inability to work.

187. Defendants, by and through its agents and employees, created and/or maintained a work environment hostile to pregnant women.

188. Defendants' discrimination against Wallace based on her pregnancy violates Title VII.

189. Defendants' termination of Wallace based on her pregnancy violates Title VII.

190. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

## COUNT IV: UNLAWFUL PREGNANCY DISCRIMINATION IN VIOLATION OF R.C. 4112.01 *et seq.*

191. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

192. Under R.C. § 4112.02 it is unlawful for an employer to discriminate against an employee on the basis of sex.

193. R.C. § 4112.01(B) provides that the term "on the basis of sex" includes, but is not limited to, "on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions."

194. R.C. § 4112.01(B) further mandates that pregnant women shall be treated the same for all employment-related purposes as other persons not so affected but similar in their ability or inability to work.

195. Defendants, by and through its agents and employees, created and/or maintained a work environment hostile to pregnant women.

196. Defendants' discrimination against Wallace based on her pregnancy violates R.C. § 4112.01 et seq.

197. Defendants' termination of Wallace based on her pregnancy violates R.C. § 4112.01 et seq.

198. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

## COUNT V: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

199. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

200. Throughout her employment, Wallace was fully competent to perform her essential job duties.

201. Defendants treated Wallace differently than other similarly-situated employees based on her race.

202. Defendants violated Title VII by discriminating against Wallace due to her race.

203. On or about December 24, 2022, Defendants terminated Wallace without just cause.

204. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

205. Defendants terminated Wallace based on her race.

206. Defendants violated Title VII when they terminated Wallace based on her race.

207. As a direct and proximate result of Defendants' conduct, Wallace has suffered and will continue to suffer damages.

### COUNT VI: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq*.

208. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

209. Throughout her employment, Wallace was fully competent to perform her essential job duties.

210. Defendants treated Wallace differently than other similarly-situated employees based on her race.

211. Defendants violated R.C. § 4112.02(A) *et seq.*by discriminating against Wallace due to her race.

212. On or about December 24, 2022, Defendants terminated Wallace without just cause.

213. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

214. Defendants terminated Wallace based on her/his race.

215. Defendants violated R.C. § 4112.01 *et seq.* when they terminated Wallace based on her race.

216. As a direct and proximate result of Defendants' conduct, Wallace has suffered and will continue to suffer damages.

**COUNT VII: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

217. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

218. Defendants treated Wallace differently than other similarly-situated employees based on her disabling conditions.

219. Defendants treated Wallace differently than other similarly-situated employees based on her perceived disabling conditions.

220. On or about December 24, 2022, Defendants terminated Wallace's employment without just cause.

221. Defendants terminated Wallace's employment based on her Disabilities.

222. Defendants terminated Wallace's employment based on her perceived disabilities.

223. Defendants violated the ADA when it discharged Wallace based on her Disability.

224. Defendants violated the ADA when it discharged Wallace based on her perceived disabilities.

225. Defendants violated the ADA by discriminating against Wallace based on her disabling conditions.

226. Defendants violated the ADA by discriminating against Wallace based on her perceived disabling conditions.

227. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

## COUNT VIII: DISABILITY DISCRIMINATION IN VIOLATION OF
## R.C. § 4112.01 *et seq.*

228. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

229. Defendants treated Wallace differently than other similarly-situated employees based on her disabling conditions.

230. Defendants treated Wallace differently than other similarly-situated employees based on her perceived disabling condition.

231. On or about December 24, 2022, Defendants terminated Wallace's employment without just cause.

232. Defendants terminated Wallace's employment based on her Disabilities.

233. Defendants terminated Wallace's employment based on her perceived disabilities.

234. Defendants violated R.C. § 4112.02 when it discharged Wallace based on her Disabilities.

235. Defendants violated R.C. § 4112.02 when it discharged Wallace based on her perceived disabilities.

236. Defendants violated R.C. § 4112.02 by discriminating against Wallace based on her disabling conditions.

237. Defendants violated R.C. § 4112.02 by discriminating against Wallace based on her perceived disabling conditions.

238. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

## COUNT IX:  RETALIATION IN VIOLATION OF TITLE VII

239. Wallace restates each and every prior paragraph of this complaint, as if it were fully restated herein.

240. As a result of Defendants' discriminatory conduct described above, Wallace complained about the race, gender, and pregnancy discrimination she was experiencing.

241. Subsequent to Wallace's reporting of race discrimination to her supervisors and employer, and filing an EEOC complaint, Wallace's employment was terminated.

242. Defendants' actions were retaliatory in nature based on Wallace's opposition to the unlawful discriminatory conduct.

243. Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

244. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

## COUNT X: RETALIATION IN VIOLATION OF THE ADA

245. Wallace restates each and every prior paragraph of this complaint, as if it were fully restated herein.

246. As a result of Defendants' discriminatory conduct described above, Wallace complained about the disability discrimination she was experiencing.

247. Subsequent to Wallace's reporting of race discrimination to her supervisors and employer, and filing an EEOC complaint, Wallace's employment was terminated.

248. Defendants' actions were retaliatory in nature based on Wallace's opposition to the unlawful discriminatory conduct.

249. Pursuant to the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

250. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

## COUNT XI:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

251. Wallace restates each and every prior paragraph of this complaint, as if it were fully restated herein.

252. As a result of Defendants' discriminatory conduct described above, Wallace complained about the race, gender, pregnancy, and disability discrimination she was experiencing.

253. Subsequent to Wallace's reporting of race discrimination to her supervisors and employer, and filing an EEOC complaint, Wallace's employment was terminated.

254. Defendants' actions were retaliatory in nature based on Wallace's opposition to the unlawful discriminatory conduct.

255. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

256. As a direct and proximate result of Defendants' conduct, Wallace suffered and will continue to suffer damages.

## COUNT XII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY – WORKPLACE HEALTH AND SAFETY

257. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

258. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because she engages in protected activity under Ohio law.

259. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o

employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

260. R.C. § 4101.12 provides that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

261. R.C. § 4101.12 further provides that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

262. R.C. § 4101.12 further provides that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

263. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc*., (1990), 49 Ohio St.3d 228. See also *Pytlinski v. Brocar Products, Inc*., 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc*., No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

264. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc*., No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

265. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc*., 2008 WL 11352589, *4 (S.D. Ohio), report and recommendation rejected on unrelated grounds in *Hucke v. Marriott Hotel Services, Inc*., 2008 WL 11352630 (S.D. Ohio).

266. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs*., 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

267. The Tenth District Court of Appeals in *Blackburn*, further held that Ohio has a public policy prohibiting terminating the employment of individuals who make complaints regarding an unsafe work environment.

268. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

269. A clear public policy exists and is manifested in the State of Ohio Uniform Food Safety Code and specifically, O.A.C. Rule 3717-1-03.2(Q), to prevent the contamination of food and beverage products by a premises.

270. Defendants violated this public policy by storing food and beverages in dirty and wet locations.

271. Defendants violated this public policy by storing food and beverages directly on the floor.

272. Defendants violated this public policy by allowing their food and beverages to be exposed to a significant rat infestation.

273. A clear public policy exists and is manifested in O.A.C. Rule 3717-1-03.6(A) requiring the discarding of unsafe, adulterated, or contaminated food and beverages.

274. Defendants violated this public policy by not discarding food and beverages that had spoiled.

275. Defendants violated this public policy by selling food and beverages that had spoiled.

276. Defendants violated this public policy by not discarding food and beverages that had been exposed to a significant rat infestation.

277. A clear public policy is manifested in O.A.C. Rule 4101:1-11-01 Section 1109.12.5 requiring queue and waiting lines servicing accessible counters or check-out aisles to be accessible.

278. Defendants violated this public policy by stacking inventory, product, and/or boxes in such a manner as to render queue and waiting lines inaccessible.

279. A clear public policy is manifested in O.A.C. Rule 1301:7-7-10 Section 1018.1 requiring the minimum width or required capacity of aisles to be unobstructed.

280. Defendants violated this public policy by stacking inventory, product, and/or boxes in such a manner as to render their store aisles inaccessible.

281. Wallace reported the numerous unsafe working conditions to Defendants in her Reports of Unsafe Conditions.

282. Wallace reported the numerous unsafe working conditions multiple times to Defendants.

283. In terminating Wallace's employment, Defendants deterred its employees from making complaints about workplace safety.

284. In deterring employees from making complaints about workplace safety, Defendants jeopardized Ohio's public policy protecting employees from making complaints regarding an unsafe working environment.

285. Defendants' termination of Wallace jeopardizes these public policies.

286. Defendants' termination of Wallace was motivated by conduct related to these public policies.

287. Defendants had no overriding business justification for terminating Wallace.

288. As a direct and proximate result of Defendants' conduct, Wallace has suffered and will continue to suffer damages.

## COUNT XIII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY – SUTTON CLAIM

289. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

290. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

291. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because she engages in protected activity under Ohio law.

292. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim." (*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

293. On or about December 24, 2022, Defendants' terminated Wallace's employment before she filed for workers' compensation benefits.

294. Defendants' termination of Wallace jeopardizes these public policies.

295. Defendants' termination of Wallace was motivated by conduct related to these public policies.

296. Defendants had no overriding business justification for terminating Wallace.

297. As a direct and proximate result of Defendants' conduct, Wallace has suffered and will continue to suffer damages.

### COUNT XIV: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
**(as against Defendants Mike, Cary, Rachel, Richard Alley, and Camila Akemon)**

298. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

299. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

300. Mike aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory termination of Wallace.

301. Mike aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Wallace.

302. Mike violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

303. Cary aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory termination of Wallace.

304. Cary aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Wallace.

305. Cary violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

306. Rachel aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory termination of Wallace.

307. Rachel aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Wallace.

308. Rachel violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

309. Alley aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory termination of Wallace.

310. Alley aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Wallace.

311. Alley violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

312. Akemon aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory termination of Wallace.

313. Akemon aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Wallace.

314. Akemon violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

315. As a direct and proximate result of Defendants' conduct, Wallace has suffered and will continue to suffer damages.

## COUNT XV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

316. Wallace restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

27

317. Defendants intended to cause Wallace emotional distress or knew that their acts or omissions would result in serious emotional distress to Wallace.

318. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

319. As a direct and proximate result of Defendants' acts and omissions as set forth above, Wallace has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

320. As a direct and proximate result of Defendants' conduct and the resulting emotional distress, Wallace has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Daisha Wallace respectfully requests that this Court grant the following relief:

(a) Issue a permanent injunction:

(i) Requiring Defendants to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      (v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against each Defendant of compensatory and monetary damages to compensate Wallace for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Wallace claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4811
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
        greg.shumaker@spitzlawfirm.com

*Attorneys for Plaintiff Daisha Wallace*

## JURY DEMAND

Plaintiff Daisha Wallace demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)

*Attorneys for Plaintiff Daisha Wallace*